BLACK RIVER SAND CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 19933. Promulgated December 12, 1929.

*H. T. Dorrance, Esq.*, for the petitioner.
*L. A. Luce, Esq.*, for the respondent.

OPINION.

Morris: The first question presented for consideration is whether the respondent incorrectly reduced the basis for the computation of exhaustion on the so-called Draper lease, acquired through the acquisition of the Gallup Sand & Gravel Co., from $30,000, as carried on the petitioner's books of account, to $1,000.

Section 234 (a) (7) of the Revenue Act of 1921 provides:

(a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

\*   \*   \*   \*   \*   \*   \*

(7) A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence. \* \* \*

The facts, briefly restated, are that the petitioner acquired the entire outstanding capital stock of the Gallup Sand & Gravel Co., in January and April of 1921, paying therefor cash, promissory notes, and shares of its own capital stock in the total amount of $122,000. In March, 1922, the Gallup Sand & Gravel Co. having total assets of $52,945.22, liabilities of $9,184.24, and total capital and surplus of $43,760.98, merged with and transferred its assets to the petitioner. Among its assets was the Draper contract, which it carried upon its books of account at $1,000. When the assets were transferred to the petitioner the Draper contract was written up in its books of account to $30,000, and good will of $49,239.02 was placed upon the books, admittedly, as a balancing entry.

In relation to this item the respondent contends that it was really an intercompany transaction, and that therefore the petitioner could not be allowed any cost for the lease greater than the predecessor paid for it. His contention is based on G. C. M. 1345A, C. B. VI-2, p. 154, in which it was held that the transfer of assets from one affiliated company to another was an intercompany transaction and the amount, if any, of consideration passing between the two subsidiaries can have no effect on the basis of the assets in the hands of the transferee for the purpose of depletion. That ruling held further that a transfer of assets between members of an affiliated group effected during the years for which consolidated income-tax returns were required—an intercompany transaction, is productive of neither taxable gain nor deductible loss in computing the net income of the affiliated group or of a new or independent basis for the computation of gain or loss on a subsequent sale.

It will be noted in this proceeding that the taxable period involved is that following the liquidation of the Gallup Sand & Gravel Co. In a recent decision, *Riggs National Bank*, 17 B. T. A. 615, we considered at some length a kindred question arising from

a transaction which terminated the affiliated status and for a taxable period subsequent thereto. In that proceeding, as here, the petitioner owned all the stock of a second corporation and in the year 1922 took over the assets of that corporation, the value of which was less than the cost of the stock. The question there presented was whether the parent company sustained a deductible loss in computing income for the period following affiliation. On the authority of *Remington Rand, Inc.* v. *Commissioner*, 33 Fed. (2d) 77 (June, 1929), we held that the petitioner was entitled to deduct the loss from its income for that portion of its taxable year which fell outside the period of affiliation. Holding as we did that that transaction was closed for tax purposes, it would necessarily follow that a new basis for computing gain or loss on the subsequent sale of the assets acquired in the liquidation and for exhaustion purposes was established. Having found as a fact that the contract in question in this proceeding had a fair market value of $30,000 at the date it was acquired by the petitioner, that value represents cost and should be used as the basis for exhaustion over the remaining life of said contract.

The second allegation of error herein is with respect to the disallowance of the deduction of an amount paid by the petitioner to F. E. Gallup.

It appears that Gallup was a man with broad experience in the sand and gravel business and that he had engaged therein for a great number of years. In April, 1920, Gallup contemplated resigning his position as president of the Gallup Sand & Gravel Co. and in order, as the record shows, that the company might still have the benefit of his broad experience and knowledge of the business, it entered into a contract with him for the payment of a salary of $6,000 per annum in consideration of Gallup's acting in an advisory capacity to the company. That contract also contained an express condition that Gallup and the other parties thereto should refrain from competition in a specified territory until December 31, 1925.

The contract itself is a rather peculiar one in that it provides that in the case of the death of Gallup, Anna B. and Catherine C. Gallup should assume his duties and obligations and receive the same salary therefor. It does not appear that those other parties to the contract had any peculiar or unusual knowledge in the sand and gravel business, which would tend to indicate that the amount paid did not in fact represent salary. However, the record shows that Gallup himself performed services during the taxable year and that those services had a fair value of $3,000 and that the amount specified by the contract was actually paid. Therefore, as to the amount paid for services rendered, we are of the opinion that the respondent erred in the disallowance thereof.

. Nor do we see any reason why the deduction of the amount paid Gallup for his covenant to refrain from competition should not be allowed. The record shows that Gallup in fact refrained from competition and that the fair value per year of his so doing was not less than $3,000, and furthermore, that payment was actually made on that basis.

In *Boonville National Bank*, 2 B. T. A. 352; *General Equipment Co.*, 2 B. T. A. 804; and *Market Supply Co.*, 3 B. T. A. 841, the question of the deductibility of sums paid under similar contracts was presented and the deductions were disapproved by this Board on the ground, however, of failure to make proper proof. Therefore, we get little or no help from those cases on the question at issue here, except that the language therein would tend to indicate that, had a proper showing been made, the deduction would have been approved.

We have held in *Farmers Feed Co.*, 17 B. T. A. 507, that the taxpayer there was entitled to amortize the cost of contracts similar to the one here. In that case the cost was paid upon the acquisition of the contract. In this proceeding payment was made ratably over the life of the contract and, therefore, the annual payment equals the amount of yearly exhaustion on the cost of the contract. We are, therefore, of the opinion that the petitioner is entitled to deduct $4,500 as salary and exhaustion for the taxable period in question. See *Christensen Machine Co.*, 18 B. T. A. 256.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

---

VAN FOSSAN, dissenting: I dissent on the allowance of the deduction under the covenant to refrain from competition. The contract did not provide for any payment for keeping the covenant, nor was the $6,000 payment divisible, as permitted by the opinion.

SMITH, STERNHAGEN, and BLACK agree with the above dissent.